**SO ORDERED.**

**SIGNED this 8th day of October, 2026.**

LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | |
|---|---|
| In re | |
| Enova Textiles, LLC | Case No. 22-50448 |
| Debtor. | Chapter 7 |
| Everett B. Saslow, Jr., Chapter 7 Trustee for Enova Textiles, LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 25-06004 |
| Enova Textiles, LLC; Elliott D. Lightman; Kristine E. Lightman; Paradigm One, LLC; Zenith Home Corp.; BMF Advance, LLC; Apex Funding Source, LLC; and Yes Capital Group, LLC; | |
| Defendants. | |

**ORDER AND OPINION**
**DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**

This Adversary Proceeding comes before the Court on the Motion for Partial Summary Judgment (Dkt. No. 161, "Motion") and related Statement of Undisputed Material Facts (Dkt. No. 162) filed by Plaintiff Everett B. Saslow, Jr., Chapter 7

Trustee, against Defendants Apex Funding Source, LLC and BMF Advance, LLC (together, "Defendants") under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056. The Defendants filed a joint response in opposition to the Motion (Dkt. No. 169, "Response") and a competing Statement of Undisputed Material Facts (Dkt. No. 170), which were followed by the Plaintiff's Reply in Support of the Motion (Dkt. No. 171, "Reply").

After reviewing the record, the Court views the Motion as, effectively, an attempt by the Plaintiff to raise a new, unpleaded claim against the Defendants at the summary judgment stage. For that reason, the Court will deny the Motion.

## I. JURISDICTION AND AUTHORITY

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b). Under 28 U.S.C. § 157(a), the United States District Court for the Middle District of North Carolina has referred this case and this proceeding to this Court by its Local Rule 83.11. This proceeding involves both statutorily core and related non-core matters under 28 U.S.C. § 157(b).[1] Both the Plaintiff and the Defendants have consented to entry of final judgment by this Court.[2]

---

[1] Plaintiff's claim for equitable subordination under § 510 of the Bankruptcy Code is a core proceeding. *See, e.g., Burns v. Dennis (In re Southeastern Materials, Inc.)*, 467 B.R. 337, 361 (Bankr. M.D.N.C. 2012); *Hudgins v. Shah (In re Systems Eng'g & Energy Mgmt. Assocs.)*, 252 B.R. 635, 650–51 (Bankr. E.D. Va. 2000) (collecting cases) ("Virtually all courts that have considered the nature of equitable subordination claims under § 510 of the Bankruptcy Code have concluded such actions are core proceedings."). On the other hand, Plaintiff's unfair and deceptive trade practices claim under North Carolina law constitutes a non-core proceeding related to this case. *See Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.)*, 449 B.R. 860, 876 (Bankr. M.D.N.C. 2011).

[2] The Federal Rules of Bankruptcy Procedure require both parties to expressly state whether they

## II. BACKGROUND

### A. The Lead Bankruptcy Case

The debtor in the underlying bankruptcy case (Case No. 22-50448, the "Lead Case") is Enova Textiles, LLC ("Debtor"), a North Carolina limited liability company formed to manufacture and sell fine linens produced through a certain patented recycled-cotton refinement process. (Dkt. No. 41, ¶¶ 17–19). The Debtor commenced its case voluntarily under chapter 7 of the Bankruptcy Code on August 8, 2022 (Lead Case Dkt. No. 1). From the beginning, administration of the case centered on sorting out a web of competing claims, rights, and interests asserted by various entities visa-a-vis the intellectual property on which the Debtor's business was based. Among the entities that purportedly had interest in that intellectual property, which is now reduced to sale proceeds, are the Defendants in this proceeding.[3] (Dkt. No. 41, "Amended Complaint").

---

consent to entry of final orders or judgment by the bankruptcy court. Fed. R. Bankr. P. 7008(a), 7012(b). But a litigant also may impliedly consent to final adjudication, so long as that consent is "knowing and voluntary." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 683–85 (2015). Here, Plaintiff affirmatively consented to entry of a final order. (Dkt. No. 77). While Defendants did not consent, (Dkt. No. 77), they failed to timely move to determine whether the Court may enter a final judgment or order in this proceeding as contemplated by the Court's Amended Omnibus Scheduling Order (Dkt. No. 79), which provides that failure to do so constitutes a waiver of any right to adjudication by an Article III court and any right to a jury trial. They are therefore deemed to have consented to this Court's entry of a final judgment on any matter, issue, or claim for relief arising from this proceeding. The Court notes for clarity, however, that an order denying partial summary judgment under these circumstances is a non-final order for purposes of determining its authority or for appeal. *See Orellana v. Godec*, 145 F.4th 516, 521 (4th Cir. 2025) (citing *Williams v. Strickland*, 917 F.3d 763, 767 (4th Cir. 2019) ("[S]ince orders denying summary judgment, or a motion to dismiss, aren't final, we normally aren't able to hear them.").

[3] Initially, the Amended Complaint named eight total defendants and alleged five causes of action. (Dkt. No. 41). After a series of stipulated dismissals based mostly on settlement agreements between the Plaintiff and various parties, the Defendants now stand as the only entities opposite the Plaintiff in this proceeding and are subject to just two causes of action.

Before filing its bankruptcy petition, the Debtor was engaged in the manufacturing and sale of fine linens. (Dkt. No. 41, ¶¶ 17–19). It operated profitably for years prepetition but began experiencing financial strain in 2020, following economic disruption in the hospitality industry. (*Id.* ¶¶ 30–35). To finance its operations while facing lower revenues, the Debtor and its principals turned to several funding companies, including the Defendants, for access to capital. (*Id.* ¶ 36). The Debtor entered agreements with the Defendants whereby the latter ostensibly purchased certain percentages of the Debtor's future receivables, exchanging cash for future payments. (Dkt. No. 162, Ex. 4; Dkt. No. 170, Ex. 1, "Funding Agreements"). Under these Funding Agreements, the Debtor received financing from the Defendants in the amount of a nominal purchase price and became obligated to remit payments of purportedly purchased receivables on a daily or weekly basis. (*Id.*). The Funding Agreements also gave the Defendants a security interest covering, among other things, the Debtor's general intangibles. (*Id.*). The Plaintiff alleges that the Funding Agreements caused the Debtor to enter a "debt spiral with no possible exit except the continued reliance on more and more [agreements]." (Dkt. No. 41, ¶ 43). The Debtor filed the underlying bankruptcy case just over a year after entering into the Funding Agreements with the Defendants.

Neither Defendant filed a proof of claim in the underlying bankruptcy case, and no one filed a proof of claim on their behalf. In fact, the record in the case conspicuously lacks any activity whatsoever on the part of either Defendant. Their claims were, however, known to the Debtor at the time it filed for bankruptcy and

listed as undisputed and secured on its schedule D. (Lead Case Dkt. No. 9). When the Trustee moved to sell the Debtor's intellectual property free and clear of liens and interests under § 363(f) of the Bankruptcy Code, he identified the Defendants as creditors whose interests in the property would be stripped off by the sale and attach to the proceeds thereof. (Lead Case Dkt. No. 159). The Court authorized such a sale, and the Trustee completed it shortly thereafter. (Lead Case Dkt. Nos. 181, 184). As a result, the Debtor's bankruptcy estate now consists entirely of cash generated by postpetition royalty payments to which the Debtor was entitled and cash proceeds from the § 363(f) sale. (Dkt. No. 161 at 2–3). The Plaintiff now seeks, via summary judgment, an order from the Court declaring that the Defendants "have no lien against any assets in the Estate." (*Id.* at 7).

**B. The Adversary Proceeding and Partial Summary Judgment Motion**

In this adversary proceeding, the Plaintiff brings two causes of action against the Defendants. (Dkt. No. 41). First, he asserts that the Defendants' dealings with the Debtor constitute unfair and deceptive trade practices in violation of North Carolina law, namely, N.C. Gen. Stat. § 75-1.1. (*Id.* ¶¶ 58–70, "UDTPA Claim"). On that basis, he requests equitable recission of the Funding Agreements, which would effectively extinguish the Defendants' interest in any estate property. (*Id.*). Second, the Plaintiff requests that the Court transfer the Defendants' liens to the estate based on principles of equitable subordination, as reflected in § 510 of the Bankruptcy Code. (*Id.* ¶¶ 71–74, "Equitable Subordination Claim"). He asserts that "upon transferring any alleged liens to the estate, the Trustee is entitled to a judgment declaring that the [Defendants] have no right, title, or interest to any

distribution and have no claim against any assets of the estate." (*Id.* ¶ 74). The Plaintiff's claims are based on a handful of very general allegations in the Amended Complaint about the Funding Agreements, including that the Defendants did no due diligence before entering into the agreements, that the agreements are disguised loans rather than true sales, and that the Defendants' lending practices are predatory. (*Id.* ¶¶ 36–44). Based on these claims and allegations, he seeks an order from the Court "declaring that the [Defendants] have no interest in any asset of the estate and shall receive no distribution from the estate." (*Id.* at 12, ¶ 2).

In the Motion now before the Court, the Plaintiff does not directly address either of the two claims he brings against the Defendants in the Amended Complaint. Instead, he argues that the Court should "hold as a matter of law that [the Defendants] have no lien against any of assets in the [e]state" because they "cannot meet their burden of proof" to establish a valid lien against any property of the estate. (Dkt. No. 161 at 5–7). This argument turns on the Plaintiff's assertions that the Defendants bear the burden of proof to demonstrate the validity of their interests and that they have failed to put sufficient evidence into the record to establish valid liens attaching to any cash in the bankruptcy estate. (*Id.*). In addition to disputing the Plaintiff's factual assertions, the Defendants argue in their Response that the Motion cannot be granted because it requests relief based on theories not pleaded in the Amended Complaint. (Dkt. No. 169, at 11 n.4). The Court directed the parties to submit supplemental briefing on the issue of whether

the relief sought by the Plaintiff in the Motion is precluded by his failure to seek such relief in the Amended Complaint, (Dkt. No. 172), and the parties did so.

The Plaintiff's supplemental brief contains two main arguments. First, the Plaintiff asserts that he did, in fact, request in the Amended Complaint a declaration that the Defendants have no interest in any asset of the estate—"[t]hus, the procedural predicate is wrong," he concludes, when it comes to the Defendants' assertion that the relief sought is precluded. (Dkt. No. 175 at 1). Second, the Plaintiff explains that under Rule 56 of the Federal Rules of Civil Procedure, a party can move for summary judgment on just part of a claim rather than an entire claim. (*Id.* at 2–4). He suggests that a ruling on the validity of the Defendants' security interests would constitute ruling on part of a claim because, in the context of this proceeding, the Defendants "have the burden of proving they actually have a lien on the Debtor's property." (*Id.*). The Plaintiff also asserts that, in the underlying bankruptcy case, he "has challenged for the past year whether the [Defendants] have a security interest in the Debtor's assets," including by questioning the validity of the Defendants' security agreements his motion to sell the Debtor's intellectual property in the underlying bankruptcy case. (*Id.* at 3). Finally, he states that were the Court to grant the Motion and declare the Defendants have no interest in property of the estate, this proceeding would lack a live controversy, and "the court could consider dismissing the remaining claims pending in this case as moot." (*Id.* at 4).

On the other side, the Defendants maintain that summary judgment as requested by the Plaintiff is inappropriate because he failed to include in the Amended Complaint any claim "challenging or seeking a declaration as to the validity and enforceability of Defendants' security interests, liens, and encumbrances in any property of the estate." (Dkt. No. 174 at 2). The Defendants also state that the Plaintiff has not sought to amend the complaint to bring such a claim and they have in no way consented to the consideration of any such claim in this proceeding. (*Id.*). The Plaintiff's attempt to proceed with summary judgment on an unpleaded claim for relief, they argue, is impermissible, absent consent. (*Id.*). As further discussed herein, the Defendants have the better argument.

## III. DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure is made applicable to this proceeding by Bankruptcy Rule 7056. Fed. R. Bankr. P. 7056. It states:

> (a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56. The rule promotes the "just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1, by providing a "method for promptly disposing of actions in which there is no genuine dispute as to any material fact or in which only a question of law is involved." 10A Wright & Miller's Federal Practice & Procedure § 2712 (4th ed. 2026); *see Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 327 (1986). Rule 56 permits equally the summary adjudication of an entire "claim or defense" or "part of [any] claim or defense." Fed. R. Civ. P. 56(a). Partial summary judgment is "merely a pretrial adjudication that certain issues be deemed established as a matter of fact," serving to "speed up litigation by eliminating before trial matters wherein there is no genuine issue of fact." *Id.* advisory committee's note to 1946 amendment. The same legal standard applies to both motions for partial and full summary judgment. *See Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).

Whether a request for summary judgment is properly based on all or part of a pleaded claim is critical because the Fourth Circuit has held that "a plaintiff may not raise new claims after discovery has begun without amending his complaint," *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 (4th Cir. 2009) (collecting cases), and a party may not use its briefs in support of or in opposition to summary judgment to amend a complaint. *Id.*; *see also Robinson v. Bowser*, No. 1:12CV301, 2013 WL 5655434, at *3 (M.D.N.C. Oct. 16, 2013) (explaining that "the Court will not allow Plaintiff to raise a new argument at the summary judgment stage, the basis of which was not evident from the Complaint" when the plaintiff sought to introduce a new theory of relief for the first time in response to a motion for summary judgment); *Aerotek Inc. v. Nosky*, No. 24-1372, 2025 WL 2141297, at *3 (4th Cir. 2025) (unpublished) (per curiam) (citing Fed. R. Civ. P. 15(a)(2))

("Although [plaintiff's] argument strains credulity, we need not reach it because Aerotek did not rely upon this theory in its complaint. Aerotek raised its . . . argument for the first time in its motion for summary judgment.").[4] The Court will therefore not consider a request for full or partial summary judgment to the extent it would effectively mean ruling on a new claim. Ultimately, it agrees with the Defendants that this is what the Plaintiff has asked the Court to do.

At core, there is a fundamental conflict between the claims asserted by the Plaintiff in the Amended Complaint and the theory of relief he now presses in the Motion. In the Amended Complaint, the Plaintiff assumes that that Defendants have valid liens against the Debtor and asks the Court to strip those liens pursuant to a favorable ruling on the underlying claims. In the Motion, however, he instead insists that the Defendants bear a burden to prove the validity of their liens in the first place, arguing that their failure to

[4] Illustrations of this principle often arise in circumstances in which a plaintiff attempts to introduce a new claim, theory, or argument for the first time in response to a defendant's motion for summary judgment. *See, e.g., Robinson*, 2013 WL 5655434, at *3 (collecting cases); *Hutton v. Hydra-Tech, Inc.*, No. 2018 WL 1363842, at *4 (M.D.N.C. March 15, 2018). It appears to occur less frequently that courts must address the addition of a new claim or theory by a plaintiff in the plaintiff's own motion for summary judgment. However, the outcome is generally the same. *See, e.g., Navajo Nation v. U.S. Forest Servs.*, 535 F.3d 1058, 1079 (9th Cir. 2008) ([O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."; *Se. Legal Found., Inc. v. United States Envtl. Prot. Div.*, 181 F. Supp. 3d 1063, 1076, 1088 (N.D. Ga. 2016) (denying a motion for summary judgment on a claim that was "not properly before this Court as [the plaintiff] ha[d] failed to assert such a claim in [the] suit and the Court may only decide the issues properly before it."); *Ranieri v. Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d 305, 350 (N.D.N.Y. 2016) ("Under these circumstances, the Court finds it inappropriate to determine the merits of a claim, on a motion for summary judgment, that was not asserted in Plaintiff's Amended Complaint."). *But c.f. PETA v. Doughney*, 263 F.3d 359, 367–68 (4th Cir. 2001) (affirming district court's grant of summary judgment on an issue raised for the first time in a party's motion for summary judgment, citing Rule 15(b)(2)).

do so permits the Court to rule directly on the status of those purported interests. Ultimately, the Court concludes that because the Amended Complaint does not put the validity of the Defendants' liens at issue, the Defendants face no burden with respect to those liens. As a result, the Plaintiff's request in the Motion cannot be considered a request to rule on all or part of a properly pleaded claim. Instead, the Motion comes across as a disguised effort to amend the Amended Complaint for the purpose of litigating a claim the Plaintiff neglected to raise in the pleading stage.[5] And because it is procedurally improper to introduce a new claim in a motion for summary judgment, the Motion will be denied.

**A. The Amended Complaint Puts No Burden on the Defendants**

The Plaintiff's UDTPA and Equitable Subordination Claims are the only live claims remaining in this proceeding. That the Plaintiff does not request judgment at this stage on either of those claims entirely is obvious to the Court and acknowledged by the Plaintiff'.[6] Whether the Motion picks out *part* of a pleaded claim such that the Court may evaluate the Defendants'

[5] Curiously, the Plaintiff references some of his actions related to the Defendants in the underlying bankruptcy case in support of the idea that the relief he seeks at this stage in this proceeding is appropriate. To the degree the Plaintiff means to suggest that the Court should import vague assertions from a separate proceeding in the underlying case into this procedurally and substantively distinct adversary proceeding as grounds on which to base an argument raised for the first time here at the summary judgment stage, the Court declines to do so.

[6] The Plaintiff's supplemental brief centers entirely on the Court's capacity to enter judgment on just part of a claim or discrete material facts. (Dkt. No. 175).

liens under Rule 56(a) is a more nuanced question. Ultimately, the Court finds that it fails to do so.

To begin, the Court observes that while Rule 56(a) requires that a party "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought," Fed. R. Civ. P. 56(a), the Motion is devoid of any reference to the UDTPA and Equitable Subordination Claims. The Plaintiff's supplemental brief does only slightly better in this regard, suggesting that those might be moot were the Court to grant the relief sought in the Motion. (Dkt. No. 175 at 4). Despite this facial deficiency, the Plaintiff's argue that a burden of proof on the Defendants' as to their liens arises here as part of the claims he asserts in this proceeding. If true, that burden would constitute an issue for the Court to rule on at this stage. However, by evaluating the nature of the claims asserted in the Amended Complaint, the Court can rule out that possibility.[7]

The UDTPA Claim is based on N.C. Gen. Stat. § 75-1.1, which provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). The Plaintiff bases this claim on

[7] The Plaintiff argues that the Motion does mirror the Amended Complaint in its request for a declaration that "Defendants have no lien against any assets in the Estate" because the Amended Complaint similarly seeks a declaration that the "[Defendants] have no interest in any asset of the estate and shall receive no distribution from the estate." (Dkt. No. 175 at 1). But many forms of relief can flow from multiple underlying theories and claims. It does not follow that by requesting the same form of relief as is requested in the Amended Complaint, the Plaintiff has necessarily identified, or moved for relief on, all or part of a pleaded claim. The Court must consider the substance of the claim or theory on which summary judgment is sought relative to what is properly pleaded.

allegations that the Defendants made predatory disguised loans to the Debtor through the Funding Agreements, knowing that those loans would cause the Debtor's business to collapse. (Dkt. No. 41, ¶¶ 40–44, 58–70). A UDTPA claim under North Carolina law requires a claimant to show "(1) an unfair or deceptive act or practice, or an unfair method of competition; (2) in or affecting commerce; [that] (3) proximately caus[es] actual injury to the plaintiff." *Peterson v. Bozzano (In re Bozzano)*, 183 B.R. 735, 738 (Bankr. M.D.N.C. 1995) (citing *Pinehurst, Inc. v. O'Leary Bros. Realty*, 338 S.E.2d 918 (1986)). No burden of proof arises for a defendant under this section unless the defendant claims to be exempt from its provisions. N.C. Gen. Stat. § 75 1.1(d).

On its face, the UDTPA Claim is simply not about the technical validity of the Defendants' security interests based on the Funding Agreements. The Plaintiff asserts in the Amended Complaint that because the Defendants conduct was inequitable, "their purportedly secured claims should be subordinated to a general unsecured claim." (Dkt, No. 41, ¶ 66). Despite the Plaintiff's use of verbiage intended, perhaps, to cast doubt on the validity of the Defendants' claims, this assertion makes clear that his theory of relief under the UDTPA Claim assumes there are secured claims to subordinate or invalidate through rescission. The Plaintiff appears to acknowledge as much in his supplemental brief, stating that "[t]he two claims against the [Defendants], rescission for violations of Chapter 75 and

equitable subordination, only apply if [they] actually have liens on the Debtor's assets." (Dkt. No. 175 at 4). The Court agrees with the Plaintiff in that regard, which is why it concludes that the UDTPA Claim cannot be the source of a burden on the Defendants to demonstrate that they are secured creditors of the Debtor in this proceeding.

The Equitable Subordination Claim is subject to the same line of reasoning. (*Id*.). Equitable subordination under § 510 of the Bankruptcy Code is a mechanism by which all or part of one claim can be given lower priority than another claim or set of claims in the context of asset distribution, despite otherwise being entitled to equal or higher priority, because the party holding that claim engaged in disfavored behavior placing it at an advantage relative to other creditors. *See generally* 4 Collier on Bankruptcy ¶ 510.05; 11 U.S.C. § 510.[8] The very nature of that relief entails that there exists one or more claim or interest with some level of priority to be subordinated to another. *See, e.g.*, *Palmdale Hills Prop., LLC v. Lehman Commer. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 876 n.6 (9th Cir. 2011) ("Equitable subordination, unlike disallowance, more closely resembles a counterclaim . . . [wherein] the claim is already allowed, but [the plaintiff] is

[8] Prevailing on a request for equitable subordination "requires a three-part showing. First, the claimant must have engaged in some type of inequitable conduct. Second, the misconduct must have resulted in injury to creditors of the debtor or conferred an unfair advantage to the claimant. Third, equitable subordination must not be inconsistent with the provisions of the Bankruptcy Code." *Burns v. First Bank (In re Se. Materials, Inc.)*, 452 B.R. 170, 176 (Bankr. M.D.N.C. 2011)(citation omitted). When equitable subordination is sought as to a creditor that is not an insider of the Debtor, a heightened burden applies. *See Fluharty v. Wood Prods., Inc., (In re Daugherty Coal Co.)*, 144 B.R. 320, 323-24 (N.D. W. Va. 1992).

asserting that although it is valid, it should be conveyed to the estate based on equitable grounds."); *In re Insilco Techs., Inc.*, 480 F.3d 212, 218 (3d Cir. 2007) ("An action for equitable subordination does not challenge the existence or validity of the underlying debt. Rather, it challenges granting the debt the priority to which it is entitled under applicable law because of the creditor's inequitable conduct."). In the context of the Equitable Subordination claim here, the Plaintiff very clearly assumes that the Defendants have liens against the assets of the Debtor that can be stripped and transferred to the estate under § 510. (Dkt. No. 41, ¶¶ 72–74). Indeed, given that the Defendants did not file claims in the underlying bankruptcy case, equitable subordination would be of no benefit to the estate if the Defendants' claims were unsecured. For these reasons, the Equitable Subordination Claim, like the UDTPA Claim, cannot be the source of a burden on the Defendants to demonstrate that they are secured creditors of the Debtor. The notion that the Defendants bear a burden to prove what the Plaintiff's claims take for granted, and in fact depend on, is contrary to bedrock principals of adversarial litigation.

**B. There is No Background or Implied Burden on the Defendants**

Since the alleged burden to demonstrate their status as lienholders is not explicitly placed on the Defendants by the claims the Plaintiff brings in the Amended Complaint, the only remaining question is whether such a

burden is supplied indirectly from those claims by some other operation of law. The Plaintiff suggests this is the case, but the Court disagrees.

For the basic proposition that the Defendants "bear the burden of proof on the question of whether they are secured creditors," the Plaintiff cites § 363(p)(2) of the Bankruptcy Code. (Dkt. No. 161 at 4). He quotes that subsection as providing that "the entity asserting an interest in property has the burden of proof on the issue of validity, priority, or extent of such interest." (*Id.*). This seems promising, but a closer look at that provision reveals that it is inapplicable in this context. Subsection 363(p) states, "In any hearing *under this section*— (2) the entity asserting an interest in property has the burden of proof . . . ." 11 U.S.C. 363(p)(2) (emphasis added). While it is true that the sale of the Debtor's assets under § 363(f) in the underlying case changed the collateral to which the Defendants' liens attach, this adversary proceeding is not a hearing under § 363 of the Bankruptcy Code, even broadly construed. [9] Consequently, § 363(p) does not support the Plaintiff's position here.

The Plaintiff also cites *In re S.M. Acquisition Co.* for the general proposition that "[i]t is well-established that the burden of proving that an item of property is subject to a security interest is on the party asserting the

[9] Subsection 363(p) would indeed have placed a burden of proof on the Defendants had the validity, priority, or extent of their liens been addressed in the context of the Debtor's sale of assets under § 363(f) at, for example, a § 363(e) adequate protection hearing or a hearing on an objection to that sale. *See, e.g., In re Elk Grove Vill. Petrol., LLC*, 562 B.R. 708, 716–17 (Bankr. N.D. Ill. 2016).

interest." *Matrix IV, Inc. v. Am. Nat'l Bank & Trust (In re S.M. Acquisition Co.)*, No. 03 CV 7072, 2004 WL 1151575, at *2 (N.D. Ill. April 29, 2004) (Dkt. No. 161 at 4). This is doubtless the case in any proceeding in which a party's security interest has been squarely put at issue by the pleadings,[10] but it has no reasonable application in cases where, as here, the validity of a party's security interest is not challenged but instead presumed by each pleaded claim. Simply put, faced with the Plaintiff's motion for summary judgment, the Defendants will not be required to prove what the Amended Complaint takes for granted. Thus, no burden as to their interests arises by background operation of law.

## V. CONCLUSION

Although the Plaintiff may believe there are legitimate questions regarding the Defendants' liens, at this stage of the proceeding, he is bound by his narrow choice of claims.[11] Because these claims place no burden on the Defendants to prove the validity of their security interests, and none otherwise arises under the circumstances here, that issue cannot be construed as part of a claim on which the Court might rule at the summary judgment stage. The Court views the Motion as an attempt by the Plaintiff to raise, for the first time, a challenge to the validity of the Defendants' secured

---

[10] For example, as in § 544 or § 548 avoidance actions or other proceedings to determine the validity, priority, and extent of a lien or other interest under Bankruptcy Rule 7001(b). *See Swope v. Com. Savings Bank (In re Gamma Center, Inc.)*, 489 B.R. 688, 693 (Bankr. N.D. Ohio 2013); *Kirtley v. Marbrey Bank (In re Rudick)*, 639 B.R. 249, 252 (Bankr. N.D. Okla. 2022).

[11] To avoid this type of adverse consequence, a common practice is to plead a claim alternatively or hypothetically, as allowed by Federal Rule of Civil Procedure 8(d)(2).

claims. As such, the Court makes no finding as to whether the Defendants have valid security interests, or even whether there is a genuine dispute of material fact as to that issue at this stage of the proceeding. Rather, and in keeping with the scheme established by the Federal Rules of Civil Procedure to promote the fundamental interests of notice and fairness, the Court will deny the Plaintiff's Motion.

For the foregoing reasons, it is hereby **ORDERED** that the Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

**END OF DOCUMENT**

# PARTIES TO BE SERVED

Enova Textiles, LLC

V.

Enova Textiles, LLC, Elliott D. Lightman, Kristine E. Lightman, Paradigm One, LLC,
Zenith Home Corp., BMF Advance, LLC, Apex Funding Source, LLC, and Yes Capital Group, LLC

Main Case No. 22-50448

AP No. 25-06004

John Paul Hughes Cournoyer, Bankruptcy Administrator
*via cm/ecf*

Joseph Zachary Frost on behalf of Defendants Apex Funding Source, LLC and BMF Advance, LLC
*via cm/ecf*

Jamey M. Lowdermilk on behalf of Counter-Defendant Everett B. Saslow, Jr.
*via cm/ecf*

Clint Shepperd Morse on behalf of Plaintiff Everett B. Saslow, Jr
*via cm/ecf*

Brett Matthew Neve on behalf of Defendant Zenith Home Corp.
*via cm/ecf*

Ashley S. Rusher on behalf of Counter-Claimants Elliott D. Lightman and Kristine E. Lightman
*via cm/ecf*

Everett B. Saslow, Jr. on behalf of Plaintiff Everett B. Saslow, Jr.
*via cm/ecf*

Enova Textiles, LLC
1193 Heron Ridge Rd.
Winston Salem, NC 27106